## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | |
|---|---|
| PATRICK JURA, individually and on behalf of all others similarly situated, | 245 Attenborough Dr<br>Rosedale MD 21237<br>Baltimore County |
| Plaintiff, | 1:24-cv-00808 |
| - against - | Class Action Complaint |
| FOOD LION LLC, | 2110 Executive Dr<br>Salisbury NC 28147 |
| Defendant | Jury Trial Demanded |

Plaintiff Patrick Jura ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.    CONSUMER DEMAND FOR NATURAL FLAVORS

1.    According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

2.    Nielsen reports that the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

3.    The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these

---

[1] Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

synthetic ingredients.[2]

4.    Mintel concluded that avoidance of artificial flavors is just as strong as consumers' desire for natural flavors, in "Artificial: Public Enemy No. 1."[3]

5.    Surveys by Nielsen, New Hope Network, and Label Insight confirmed that upwards of eighty percent of the public tries to avoid artificial flavors, believing them to be potentially unhealthy and contributing to a wide range of maladies.

6.    One expert noted that "When [consumers] think about whether a food is healthy or not, [they] likely consider whether or not it has the word 'artificial' in the ingredients list."

## II.   LEGAL BACKGROUND

7.    Over 100 years ago, consumers were similarly concerned, based on the reports of muckraking journalists, about the harmful and untested chemicals that were added to their food.

8.    In response to this unregulated environment where synthetic molecules manufactured in laboratories substituted for the wholesome ingredients promoted on

---

[2] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

[3] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit into Our Health-Conscious World, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015; Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

food packaging, the Pure Food and Drug Act of 1906 required disclosure of artificial flavoring to ensure the public would get what they paid for.

9.    These requirements were strengthened by the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq.*

10.   Maryland adopted these laws through its Food, Drug, and Cosmetic Act ("MDFDCA"). Md. Code, Health-Gen. §§ 21-201 *et seq.*; Md. Code, Health-Gen. § 21-241(a) (adopting federal rules and regulations).

11.   The newly established Food and Drug Administration ("FDA") was aware of how companies used advanced scientific knowledge to substitute dangerous and unhealthy flavoring chemicals in place of promoted ingredients like fruits and natural fruit flavors.

12.   Beyond the potential to cause physical harm, these synthetic substances were significantly cheaper than the natural ingredients and natural flavors they replaced.

13.   To facilitate an honest marketplace and protect consumers, the rules required that the source of a food's taste, whether the pictured ingredients, natural flavors from those ingredients, or synthetic sources, be conspicuously disclosed to the buyer as part of a food's name. 21 C.F.R. § 101.22(i).

14.   According to one scholar, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely

on the label to readily distinguish between the two."[4]

15.    This was supported by research showing that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" to make quick purchasing decisions.[5]

16.    To reach this goal, the FDA defined a flavor as a substance which imparts taste. 21 C.F.R. §§ 101.22(a)(1) and (3).

17.    Then, it defined natural flavor as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

18.    In contrast, artificial flavor was defined as "any substance, the function of which is to impart flavor," but from synthetic or chemical sources. 21 C.F.R § 101.22(a)(1).

## III.  FLAVOR OF BLUEBERRIES

19.    Taste is a combination of sensations arising from specialized receptor

---

[4]  Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

[5]  Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

cells in the mouth.[6]

20.   Taste is complex, because, for instance, the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

21.   Each of those acids is responsible for unique sensory characteristics of sourness.

22.   Fruit flavors, including the flavor of blueberries, are the sum of the interaction between their nonvolatile compounds, such as sugars and organic acids, and volatile compounds, including aromatic hydrocarbons, aldehydes, ketones and esters.

23.   The prototypical sweet, tart, sour and fruity taste of blueberries is based on the interaction of their free sugars, glucose and fructose, with its main organic acid of malic acid and secondary organic acids of citric acid and quinic acid.[7]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Malic Acid | Citric Acid |
| Blueberry (Highbush, Jersey) | Malic Acid | Citric Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Pepper | Citric Acid | Malic Acid, Succinic Acid |

---

[6] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[7] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| | | |
|---|---|---|
| (habanero) | | |
| Coconut | Malic Acid | Citric Acid |
| Cranberries (American varietals) | Malic Acid (64%) | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry (wild pentaploid, Turkish cultivars) | Malic Acid, Tartaric Acid | Citric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

24.   The compound of L-Malic acid gives blueberries their characteristic tart, sour, sweet and fruity taste that is valued by consumers.

25.   The amount and proportion of malic acid is a critical factor in producing this preferred tart, sweet and sour blueberry taste.

## IV.  DESPITE PROMOTING BLUEBERRIES AND NATURAL FLAVOR, TASTE IS FROM ARTIFICIAL FLAVORING

26.    According to Paul Manning, president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[8]

27.    To capture this trend, Food Lion LLC ("Defendant") sells Fruit & Grain Cereal Bars packaged in several shades of blue, depicting two bars with dark blue filling on a picnic table, with six scattered fresh blueberries, described as "Blueberry [–] Naturally Flavored" and "Made with Real Fruit Flavored Filling" under its Food Lion brand ("Product").



28.    However, "Naturally Flavored" and "Made with Real Fruit Flavored

---

[8] Keith Nunes, Using Natural Ingredients to Create Authentic, Fresh Flavors, Food Business News, Sept. 20, 2018.

Filling" are false, deceptive, and/or misleading, because the Product uses artificial flavoring ingredients to create, simulate, resemble and reinforce its filling's blueberry taste.

29.   This is not disclosed on the front label or the fine print on the back or side in the ingredient list.

30.   While the ingredient list in fine print on the side of the box indicates the filling contains blueberries and natural flavor, it also includes the synthetic form of malic acid.



INGREDIENTS: BLUEBERRY FLAVORED FILLING (SUGAR, GLYCERIN, CORN SYRUP, WATER, BLUEBERRY PUREE, APPLE PUREE, MALTODEXTRIN, APPLE POWDER, PECTIN, XANTHAN GUM, MALIC ACID, CITRIC ACID, SODIUM ALGINATE, DICALCIUM PHOSPHATE, SODIUM CITRATE, MONO- AND DIGLYCERIDES, ASCORBIC ACID [PRESERVATIVE], POTASSIUM SORBATE [PRESERVATIVE], NATURAL FLAVOR, COLORS [RED 40, BLUE 1]), WHOLE OAT …

31.    Since the ingredients are listed in order of predominance by weight, listing "Malic Acid" before "Natural Flavor" means the filling contains more artificial blueberry flavor than natural blueberry flavor. 21 C.F.R. § 101.4(a)(1).

A.  Two Types of Malic Acid

32.    Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

33.   These are right and left-hand versions of the same molecular formula.[9]



34.   L-Malic Acid occurs naturally in blueberries and is responsible for their characterizing fruity, sour, tart and/or sweet taste.

35.   D-Malic Acid does not occur naturally anywhere.

36.   D-Malic Acid is found as a racemic mixture of the D and L isomers, or DL-Malic Acid.

37.   The production of DL-Malic Acid begins with petroleum.

38.   It involves a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at 180°C.

39.   This results in an equilibrium mixture of malic and fumaric acids.

40.   The soluble fumaric acid is filtered and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

B.   Distinguishing L- from DL- Malic Acid

_____

[9] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

41.   Since the two types of malic acid are closely related, companies may replace naturally occurring L-Malic Acid with the lower cost and synthetic DL-Malic Acid.

42.   According to Wilhelmsen, adulteration involving the direct addition of foreign substances can be determined based on well-defined detection limits, sufficiently validated detection methods, and knowledge the adulterant and/or any markers are not found in the food product.[10]

43.   This is because any detection is indicative of adulteration, without complicated statistical or other analysis.

44.   Since plants do not synthesize D-Malic acid, its presence in certain foods above established thresholds indicates that synthetic malic acid has been added.

45.   The most accepted method to determine if a food contains DL-Malic Acid is based, in part, on a standard adopted by the European Union for the enzymatic determination of the total content of D-malic acid in fruit juices and related products. EN 12138:1997.

46.   This enzymatic approach is based on D-malate dehydrogenase ("D-MDH"), an enzyme that oxidizes D-malic acid ("D-malate") to pyruvate and carbon dioxide in the presence of an appropriate cofactor.

---

[10] Eric C. Wilhelmsen, "Food Adulteration," in Food Science and Technology, Marcel Dekker (2004).

47. D-malate is oxidized by nicotinamide adenine dinucleotide ("NAD") to oxaloacetate.

$$\text{D-malate} + \text{NAD} \xrightarrow{+ \text{ D-MDH}} \text{pyruvate} + CO_2 + \text{NADH} + H^+$$

48. The oxaloacetate formed by this reaction is split into pyruvate and carbonic acid.

49. The quantity of NADH formed is proportional to the concentration of D-malic acid and measured at a wavelength of 334, 340 or 365 nm.

50. Laboratory analysis of the Product's filling was performed based on this enzymatic method in accordance with accepted industry standards and protocols.

51. Applying D-MDH, D-Malic acid was preferentially oxidized over L-Malic Acid.

52. The result was that the synthetic D-isomer of malic acid was identified above the appropriate threshold for this method, indicating the Product used artificial, DL-Malic Acid and not L-Malic Acid.

53. This confirmed the Product contains more artificial blueberry flavor than natural flavors, because malic acid is listed ahead of natural flavor on the ingredient list.

54. The combination of DL-Malic Acid with the free sugars from blueberries is not equivalent to the taste of blueberries and natural flavors.

55. The addition of DL-Malic Acid imparts, creates, simulates, resembles

and/or reinforces the characteristic tart, fruity, sweet and sour taste that blueberries are known for.

56.   DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from petroleum, made through chemical reactions.

57.   DL-Malic Acid is an artificial flavoring ingredient.

58.   DL-Malic Acid does not supplement, enhance, or modify the original taste of blueberries, because it is a core component of their taste. 21 C.F.R. § 170.3(o)(11).

## V.   "NATURALLY FLAVORED" DESCRIPTION IS MISLEADING

59.   The consumer protection statute of Maryland is based on the standards of the Federal Trade Commission ("FTC"), which recognizes the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1); Md. Code, Health-Gen. § 21-102(b).

60.   The Product is "misbranded" and misleads consumers because its labeling is false or misleading in any particular. 21 U.S.C. § 343(a)(1); Md. Code, Health-Gen. § 21-210(b)(1).

61.   The Product's labeling fails to prominently and conspicuously reveal facts relative to the proportions or absence of blueberries, natural flavors and

artificial flavors.

62.    This is because "Blueberry – Naturally Flavored" tells consumers the filling's taste is from blueberries and natural flavors, even though it is provided in part by DL-Malic Acid, an artificial flavoring ingredient.

63.    The replacement of blueberries and natural flavor with DL-Malic Acid, an artificial flavoring ingredient, is of material interest to consumers, because (1) these ingredients cost more than manufactured chemical compounds and (2) because consumers seek to avoid artificial flavors.

64.    The failure to disclose the source of the Product's blueberry taste misleads consumers who expect its taste to come only from blueberries and natural flavors.

65.    The Product is "misbranded" and misleading because even though consumers will expect its taste to be only from the identified ingredient of blueberries and natural flavors, its taste comes in part from the artificial flavoring ingredient of DL-Malic Acid. 21 U.S.C. § 343(a)(1); Md. Code, Health-Gen. § 21-210(b)(1).

66.    The Product is "misbranded" and misleading because "Made with Real Fruit Flavored Filling" is a "half-truth," because even though the filling includes the depicted fruit of blueberries and natural flavor, it includes artificial flavoring in the form of DL-Malic Acid for its blueberry taste, present in a greater amount than

natural flavor. 21 U.S.C. § 343(a)(1); Md. Code, Health-Gen. § 21-210(b)(1).

67.   The Product is "misbranded" and misleading because the fruit and grain cereal bars are identified as "Blueberry – Naturally Flavored," which includes or suggests the ingredients of blueberries and natural flavors, but does not include artificial flavors, even though malic acid is identified on the ingredient list in fine print, notwithstanding it is not identified as an artificial flavoring ingredient. 21 U.S.C. § 343(a)(1); Md. Code, Health-Gen. § 21-210(b)(1); 21 C.F.R. § 101.18(b).

68.   The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

69.   The Product is "misbranded" and misleading because even though it is required to conspicuously display that its blueberry taste is provided by artificial flavoring, it fails to disclose this anywhere. 21 U.S.C. § 343(f); Md. Code, Health-Gen. § 21-210(b)(4).

70.   The Product is "misbranded" and misleading because it includes artificial flavoring in the form of DL-Malic Acid but "it [does not] bear[s] labeling stating that fact." 21 U.S.C. § 343(k); Md. Code, Health-Gen. § 21-210(b)(9).

71.   The Product is "misbranded" and misleading because "Blueberry [–]

Naturally Flavored Fruit & Grain Cereal Bars" is not a truthful or non-misleading "common or usual name." 21 U.S.C. § 343(i); Md. Code, Health-Gen. § 21-210(b)(7).

72.  "Blueberry [–] Naturally Flavored Fruit & Grain Cereal Bars" does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); 21 C.F.R. § 101.3(b)(2).

73.  This is because it fails to disclose the source of its blueberry taste, based on the presence of DL-Malic Acid, an artificial flavoring ingredient which imparts the taste of blueberries. 21 C.F.R. § 101.22(i)(2).

74.  Federal and state regulations require that because the filling's taste is represented as "Blueberry," yet contains DL-Malic Acid that imparts the flavor of blueberries, "Blueberry" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Blueberry Flavored Fruit & Grain Cereal Bars," "Artificially Flavored Blueberry Fruit & Grain Cereal Bars," or "Blueberry [ – ] Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

75.  Instead, "Blueberry" is directly above the term, "Naturally Flavored," when this is false and misleading, based on the use of DL-Malic Acid, an artificial flavoring ingredient, to provide a blueberry taste.

## VI.  CONCLUSION

16

76.   By adding the synthetic ingredient of DL-Malic Acid, purchasers do not receive a product that is "Naturally Flavored" but one that is artificially flavored.

77.   The Product could have included more of the highlighted fruit ingredient of blueberries, L-Malic Acid from blueberries or natural flavoring from sources other than blueberries but used artificial DL-Malic Acid because it cost less and/or more accurately imparted, provided, simulated, resembled, and reinforced the taste of blueberries.

78.   By adding the synthetic ingredient of DL-Malic Acid, purchasers get a smaller amount of blueberries and natural flavors than what is promised by the front label.

79.   Consumers buying fruit filled cereal bars labeled as naturally flavored without any indication that artificial flavoring supplies the filling's taste are seeking to avoid synthetic ingredients like DL-Malic Acid, created in a laboratory.

80.   As a result of the false and misleading representations and omissions, the Product is sold at a premium price, around $2.39 for eight bars, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

81. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

82.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

83.   Plaintiff is a citizen of Maryland.

84.   Defendant is a citizen of Delaware, Massachusetts, and North Carolina.

85.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

86.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at the approximately 52 Food Lion stores in this State and online to citizens of this State.

87.   The Court has jurisdiction over Defendant because it transacts business within Maryland and sells the Product to consumers within Maryland from the approximately 52 Food Lion stores in this State and online to citizens of this State.

88.   Defendant transacts business in Maryland, through the sale of the Product to citizens of Maryland from the approximately 52 Food Lion stores in this State and online to citizens of this State.

89.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

90.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by

regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

91.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origins, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

92.   Venue is in this District with assignment to the Northern Division because a substantial or the entire part of the events or omissions giving rise to these claims occurred in Baltimore County, which is where Plaintiff's causes of action accrued.

93.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in Baltimore County.

94.   Plaintiff first became aware the labeling was false and misleading in Baltimore County.

95.   Plaintiff resides in Baltimore County.

## PARTIES

96.   Plaintiff Patrick Jura is a citizen of Baltimore County, Maryland.

97.   Defendant Food Lion LLC is a North Carolina limited liability company.

98.   The member of Defendant is Ahold Delhaize USA Inc.

99.   Ahold Delhaize USA Inc. is a Delaware corporation with a principal place of business in Massachusetts and North Carolina.

100.  Food Lion is a grocery chain operating over 1,000 stores in ten states of the Mid-Atlantic and Southeastern United States.

101.  While Food Lion sells leading national brands of products, it also sells many products under one of its private label brands, Food Lion.

102.  Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

103.  Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

104.  Products under the Food Lion brand have an industry-wide reputation for quality.

105.  In releasing products under the Food Lion brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

106.  Food Lion gets national brands to produce its private label items due its

20

loyal customer base and tough negotiating.

107. Private label products under the Food Lion brand benefit by their association with consumers' appreciation for the Food Lion brand overall.

108. That Food Lion branded products met this high bar was proven by focus groups, which rated them above their name brand equivalent.

109. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Food Lion] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

110. Private label products generate higher profits for retailers like Food Lion because national brands spend significantly more on marketing, contributing to their higher prices.

111. The development of private label items is a growth area for Food Lion, as they select only top suppliers to develop and produce Food Lion products.

112. Plaintiff is like most consumers and prefers foods with natural ingredients and natural flavors.

113. Plaintiff is like most consumers and tries to avoid foods with artificial flavors, based on the belief they are potentially harmful, not natural and unhealthy.

114. Plaintiff is like most consumers and looks to the front label of foods to see what he are buying and to learn basic information about it.

115. Plaintiff is like most consumers and is accustomed to the front label of

packaging telling him if what he is buying gets its taste from artificial flavoring.

116. Plaintiff is like most consumers and when he sees that a front label does not disclose artificial flavoring, he expects its taste is from the identified ingredients and/or natural flavorings.

117. Plaintiff is like most consumers and when he sees a label that tells him a food is "Naturally Flavored," he does not expect its taste to be from artificial flavoring and/or that it will contain artificial flavoring ingredients.

118. Plaintiff read and relied on the Product's label and packaging, in several shades of blue, depicting two fruit and grain cereal bars with dark blue filling on a picnic table, with six scattered fresh blueberries, described as "Blueberry [–] Naturally Flavored" and "Made with Real Fruit Flavored Filling."

119. Plaintiff expected the taste of the Product's blueberry filling was from blueberries and natural flavors, not artificial flavor.

120. Plaintiff purchased the Product between February 2021 and February 2024, at Food Lion stores in Maryland, at or around the above-referenced price.

121. Plaintiff relied on the omission of artificial flavoring from the front label as it related to the taste of the Product's filling.

122. Plaintiff did not expect that in addition to blueberries and natural flavors, the Product's filling would use artificial flavoring in the form of the synthetic compound of DL-Malic Acid to provide its blueberry taste.

123. Plaintiff did not expect that the Product would use DL-Malic Acid in place of adding more blueberries and natural flavors.

124. Plaintiff did not expect the Product would contain more artificial blueberry flavor than natural flavors.

125. Plaintiff paid more for the Product than he would have had he known (1) its fruit filling's taste was from artificial flavoring instead of only from blueberries and natural flavors, and (2) it contained more artificial blueberry flavoring than natural flavors, as he would not have bought it or would have paid less.

126. The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

127. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

## CLASS ALLEGATIONS

128. Plaintiff seeks to represent the following class:

> All persons in Maryland who purchased the Product in Maryland during the statutes of limitations for each cause of action alleged.

129. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the

foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

130. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

131. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

132. Plaintiff is an adequate representative because his interests do not conflict with other members.

133. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

134. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

135. The class is sufficiently numerous, with over 100 members, because it has been sold throughout the State for several years with the representations and omissions identified here.

136. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Maryland Consumer Protection Act ("MCPA"),
Commercial Law, Md. Code, § 13-101, *et seq.*

137. Plaintiff incorporates by reference paragraphs 1-80.

138. The purpose of the MCPA is to protect consumers against unfair and deceptive practices.

139. The MCPA considers any unfair or deceptive acts or practices in the conduct of any trade or commerce to be unlawful.

140. Violations of the MCPA can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq.*

141. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

142. In considering whether a food's label is misleading, it is required to consider not only representations made or suggested by statements and words, but also the extent to which the labeling fails to reveal facts material in the light of such representations.

143. Defendant's false and deceptive representations and omissions with

respect to the Product's blueberry filling are material in that they are likely to influence consumer purchasing decisions.

144. The replacement of blueberries and natural flavors with DL-Malic Acid, an artificial flavoring ingredient, is of material interest to consumers, because (1) these ingredients cost more than manufactured chemical compounds and (2) because consumers seek to avoid artificial flavors, for reasons related to health and wellness.

145. The labeling of the Product violated the FTC Act and thereby violated the MCPA because the packaging, in several shades of blue, depicting two bars with dark blue filling on a picnic table, with six scattered fresh blueberries, with the fruit and grain cereal bars described as "Blueberry [–] Naturally Flavored" and "Made with Real Fruit Flavored Filling," created the erroneous impression the Product's filling got its taste only from the identified ingredient of blueberries and natural flavors, when this was false, because it contained added artificial flavoring in the form of DL-Malic Acid.

146. Violations of the MCPA can be based on public policy, established through statutes, law or regulations.

147. The labeling of the Product violates laws, statutes, rules and regulations that are intended to protect the public.

148. The labeling of the Product violated the MCPA because the packaging, in several shades of blue, depicting two bars with dark blue filling on a picnic table,

with six scattered fresh blueberries, with the fruit and grain cereal bars described as "Blueberry [–] Naturally Flavored" and "Made with Real Fruit Flavored Filling," when it contained added artificial flavoring in the form of DL-Malic Acid, was contrary to the MDFDCA, which adopted the FFDCA, the purpose of which was to promote "honesty and fair dealing" to the public.

149. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food.

150. These include the following federal and state laws and regulations described above.

| Federal | State |
|---|---|
| 21 U.S.C. § 343(a)(1) | Md. Code, Health-Gen. § 21-210(b)(1) |
| 21 U.S.C. § 343(f) | Md. Code, Health-Gen. § 21-210(b)(4) |
| 21 U.S.C. § 343(k) | Md. Code, Health-Gen. § 21-210(b)(7) |
| 21 U.S.C. § 343(i) | Md. Code, Health-Gen. § 21-210(b)(9) |
| 21 C.F.R. § 101.3(b)(2) | |
| 21 C.F.R. § 101.18(b) | |
| 21 C.F.R. § 101.22(i) | Md. Code, Health-Gen. § 21-241(a) |
| 21 C.F.R. § 101.22(i)(2) | |
| 21 C.F.R. § 102.5(a) | |

151. Plaintiff believed the Product's filling got its taste only from the identified ingredients of blueberries and natural flavors, even though it contained

27

added artificial flavoring in the form of DL-Malic Acid.

152. Plaintiff paid more for the Product and would not have paid as much if he knew that (1) its filling did not get its taste only from the identified ingredients of blueberries and natural flavors, but also from added artificial flavoring in the form of DL-Malic Acid and (2) it contained more artificial blueberry flavor than natural flavors.

153. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the MCPA.

154. Plaintiff will produce evidence showing how he and consumers paid more than they would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

155. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by his payment of a price premium for the Product, which is the difference between what he paid based on its labeling and marketing, and how much it would have been sold for without the misleading representations and omissions identified here.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   March 19, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

*Counsel for Plaintiff*

**Certificate of Service**

I certify that on March 19, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan